IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ALLIANCE OF HEALTH CARE SHARING MINISTRIES, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL CONWAY, in his official capacity as Commissioner of the Colorado Division of Insurance, <br><br> Defendant. | Case No. 1:24-CV-01386-GPG-STV |

## MOTION FOR INJUNCTION PENDING APPEAL

Colorado's permanent regulation, effective May 15, 2024, has never been applied to Plaintiff's members. Plaintiff's members did not comply with that regulation in the last reporting cycle, instead submitting minimal, already public information. Colorado promised not to enforce the regulation against them as part of its litigation strategy in this case and published a public report in October 2024 that acknowledged that Plaintiff's members' information was not submitted substantially. AHCSM Ex. A, Appx. p. 7, 7 n.4, 9, 9 n.7, 10, 11, 11 n.9, 16 n.10–11, 17 n.12–14, 19 n.17–19, 20 n.20–21, 21 n.23–25, 22 n.26–27, 25 n.30 – Health Care Sharing Plans and Arrangements in Colorado, 2023 Report. The status quo is that Plaintiff's members do not comply with the regulation and Colorado does not enforce the regulation. Plaintiff asks for an injunction pending appeal to continue that status quo.

1

Despite agreeing not to enforce its permanent regulation in its first-ever reporting cycle during the pendency of preliminary injunction proceedings, thereby fatally undermining any argument that enforcement is required by the public interest or that the balance of equities favors Colorado, Colorado has not agreed to continue that policy of non-enforcement through the pendency of an appeal of Plaintiff's motion for a preliminary injunction (and opposes this motion). This litigation gamesmanship—the permanent regulation is critical to the public interest except when it is not—should not be rewarded.

That is especially true because the discovery to date, which would have been introduced in an evidentiary hearing on Plaintiff's motion, only further reinforces that Colorado has, contrary to its arguments to this Court, (i) gerrymandered its law to target disfavored religious organizations, *compare* Dkt. 46, Resp. to Preliminary Injunction Motion at 13 ("The Reporting Law does not authorize the Commissioner to exempt a specific entity[.]") *with* AHCSM Ex. B, Appx. p. 27–33 – [DOI_014673–014679] (acknowledging that the Reporting Law then-pending before the Legislature was amended to give the DOI exemptive authority to "avoid unintentional burden on the 'good guys'" [a favored secular group]), (ii) partnered with the anti-religious satirist John Oliver to disparage health care sharing ministries, *compare* Dkt. 46 at 16–18 (disclaiming that the law is motivated by animus) *with* AHCSM Ex. C, Appx. p. 35–45 – [DOI_001171–001181] (directing DOI staff to "pull recent complaints" about health care sharing ministries for the John Oliver show "ASAP"), and (iii) pushed the legislation before seeing any evidence of the need for it, *compare* Dkt. 46, at 13–17, 29 (discussing various of Colorado's purported interests in the law depending on the section of the brief) *with*

2

AHCSM Ex. D, Appx. p. 47–52 – [DOI_000821–000826] (stating that the Commissioner is "signed off" on the legislation but was "going to need help building the case" for it). *See United States v. Virginia*, 518 U.S. 515, 533 (1996) ("[A] justification must be genuine, not hypothesized or invented *post hoc* in response to litigation.").

It also is true that Plaintiff's members will suffer two types of irreparable harm should the law be enforced against them: (1) the irreparable harm of suffering a constitutional violation, which this Court addressed and is intertwined with the merits, and (2) the irreparable harm of incurring compliance costs, which this Court did not address. Plaintiff, consequently, satisfies the standard for an injunction pending appeal.

## FACTS AND PROCEDURAL HISTORY

Colorado enacted health care sharing ministry legislation in 2022. After promulgating a series of interim, emergency, implementing regulations, Colorado promulgated a permanent regulation in April 2024 and then delayed its effective date to May 15, 2024. For that reporting cycle, and unlike the previous emergency cycles where Plaintiff's members evidenced good-faith attempts to work with Colorado, Plaintiff's members did not submit the full suite of information required to be submitted by Colorado, instead submitting minimal, high-level information that they largely already share publicly (or would voluntarily do so). Specifically, Plaintiff's members submitted no more than their names, the number of current and projected members of Colorado residents, households, employer groups (and affiliated individuals), the current number of national members, and the total amount of contributions collected (columns A–H and V–Y of the spreadsheet). Plaintiff's members did not submit administrative expenses, program

3

expenses, health care costs incurred, amounts paid before sharing, amounts paid to providers, amounts of sharing requests, number of sharing requests, requests declined to share, appeals, appeals granted, percentages regarding the same, amounts qualifying for sharing, producer information, and producer enrollment figures (columns I–U and Z–AA).  Plaintiff's members also did not submit any information regarding third parties, producers, or county information (seven additional columns on the second tab of the reporting spreadsheet).  And Plaintiff's members did not submit any marketing materials.

Plaintiff brought suit against the Colorado regime in May 2024, seeking a preliminary injunction.  Colorado represented to Plaintiff and this Court that it would not enforce its regime against Plaintiff's members during the pendency of Plaintiff's preliminary injunction motion (notwithstanding that Plaintiff's members had not complied).  This Court then allowed Colorado to take discovery before filing its opposition to Plaintiff's motion for a preliminary injunction, extending the deadline for the opposition to four months after the preliminary injunction was filed.  After the completion of briefing in September, the parties offered their availability for a hearing on the preliminary injunction motion.  Discovery continued, and Colorado began producing documents in response to requests for production.  The Court issued its 66-page ruling denying Plaintiff's motion in January.  Plaintiff filed a notice of appeal and now brings this motion.

## ARGUMENT

Federal Rule of Civil Procedure 62(d) allows a district court to "grant an injunction . . . [w]hile an appeal is pending from an interlocutory order . . . that refuses . . . an injunction[.]" Under Rule 62(g), "This rule does not limit the power of the appellate court or one of its judges or justices . . . to stay proceedings—or . . . grant an injunction—while an appeal is pending[.]" While different rules of procedure govern the power of district courts and courts of appeals to stay an order pending appeal, *see* Fed. R. Civ. P. 62(d); Fed. R. App. P. 8, under both rules "the factors regulating the issuance of a stay [of the court's order] are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Nken v. Holder*, 556 U.S. 418, 434 (2009).

While there is "substantial overlap" between this standard and that governing preliminary injunctions, they are not identical. *Nken*, 556 U.S. at 434. In the Tenth Circuit, a party seeking a stay of a district court's order and an injunction pending appeal must show: "(a) the likelihood of success on appeal; (b) the threat of irreparable harm if the stay or injunction is not granted; (c) the absence of harm to opposing parties if the stay or injunction is granted; and (d) any risk of harm to the public interest." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (citing 10th Cir. R. 8.1).

Significantly, if a party "can meet the other requirements for a stay pending appeal, they will be deemed to have satisfied the likelihood of success on appeal element if they

5

show questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Id*. at 1020 (internal quotation marks omitted); *see Denver Bible Church v. Becerra*, No. 1:20-CV-02362-DDD-NRN, 2021 WL 1220758, at *3 (D. Colo. Mar. 28, 2021); *see also In re Revel AC, Inc.*, 802 F.3d 558, 568–69 (3d Cir. 2015) (a sufficient degree of success for an injunction pending appeal is "a reasonable chance, or probability, of winning," and "the likelihood of winning on appeal *need not* be more likely than not") (internal quotation marks omitted) (emphasis added). In other words, where serious legal questions are presented, an injunction on appeal may be necessary even when an injunction was not required at the trial level.  *Cf.*, *O Centro Espirita Beneficiente Uniao De Vegetal v. Ashcroft*, 314 F.3d 463, 467 (10th Cir. 2002) (staying injunction on appeal without addressing the validity of the underlying injunction); *Cigar Ass'n of Am. v. U.S. FDA.*, 317 F. Supp. 3d 555, 561–64 (D.D.C. 2018) (granting stay of court's own order denying motion for preliminary injunction and granting an injunction pending appeal, despite concluding a low likelihood of success on the merits); *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 106 (D.D.C. 2018) (observing that "a 'serious legal question' could help tip the scales . . . when the likelihood of success on appeal is low"); *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 13–14 (D.D.C. 2014) (granting injunction pending appeal where decision "presented difficult and substantial legal questions . . . and was at times, a close one").

## I.  PLAINTIFF HAS DEMONSTRATED SUBSTANTIAL QUESTIONS ON THE MERITS

Even though this Court has already ruled against Plaintiffs' merits arguments, this case presents substantial legal questions that warrant an injunction pending appeal. To be clear, every request for an injunction pending appeal that arises in this context occurs *despite* a rejection of the arguments presented to the court.  But so long as the case presents "serious legal questions . . . the fact that the court does not share Plaintiffs' conviction that it erred is not fatal to their request for an injunction pending appeal." *Cigar Ass'n of Am.*, 317 F. Supp. 3d at 561.  Here, there are two independent reasons that this case presents serious and substantial legal questions.  The first is that the Court's opinion resolves novel legal issues.  The second is that discovery to date (and it is still ongoing) has undermined Colorado's arguments.

First, the Court's opinion resolves several novel legal issues.  Most fundamentally, this Court's opinion resolves the legal question of how to apply *Fulton*'s application of strict scrutiny to regulations that authorize exemptions at officials' discretion to situations where that discretion is implemented by way of rulemaking. *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021).  *Fulton* does not distinguish between these situations, and neither did another case in this district.  *See Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189 (D. Colo. 2023).  Indeed, Colorado cited no case refusing to apply *Fulton* in the rulemaking context.  This Court's opinion, however, ruled for Colorado on this issue. Dkt. 54 at 28–32.  In addition, this case presents the novel legal question of how to apply the Establishment Clause to regulations that intrude on the affairs of a religious organization.  Colorado argued that there was no such prohibition.  This Court rejected

7

Colorado's legal argument, *id.* at 32–34, but essentially gutted this protection by holding that Colorado's regime—which the uncontroverted evidence shows requires 200 hours of data and document collection *per ministry* and the submission of reams of information, *see* Dkt. 8-5 at ¶ 20—requires "only an annual email." *Id.* at 40.

Second, the discovery in this case continues to undermine Colorado's arguments in at least three ways. Colorado argued that the law is not gerrymandered to target ministries and the Commissioner does not have exemptive authority under the law. *See* Dkt. 46 at 13 ("The Reporting Law does not authorize the Commissioner to exempt a specific entity[.]"). Yet its own Deputy Commissioner exchanged emails with state legislative staff in which they discussed how to make sure that a favored dental practice that fell within the statutory terms could be excluded through amended language and how the Commissioner had the power to exempt organizations under the statute. *See* AHCSM Ex. B, Appx. p. 27–33 – [DOI_014673–014679] (acknowledging that the Reporting Law then-pending before the Legislature was amended to give the DOI exemptive authority to "avoid unintentional burden on the 'good guys'" [a favored secular group]).

Colorado also argued that it enacted the law with complete neutrality towards religion. Yet DOI officials, including Colorado's Commissioner of Insurance himself, spoke with the John Oliver show—a nationally-known anti-religious entertainer, *see, e.g.*, Gary Varvel, *John Oliver, Jim Carrey Use Art to Mock Christians*, IndyStar (Mar. 20, 2018)—to support Mr. Oliver's biased critique of health care sharing ministries. See AHCSM Ex. C, Appx. p. 35–45 – [DOI_001171–001181] (directing DOI staff to "pull recent complaints" about health care sharing ministries for the John Oliver show "ASAP").

8

No reasonable government official could understand this high-level engagement as anything other than supporting Mr. Oliver's historical attacks on religion.[1]

Finally, Colorado argued that the Commissioner supported the law because of his concerns over health care sharing ministries. But the Commissioner's own personal email states that he "signed off" on the legislation and then, subsequently, was "going to need help building the case" for it. *See* AHCSM Ex. D, Appx. p. 47–52 – [DOI_000821–000826].

This evidence, which would have been presented at an evidentiary hearing, further confirms that this case presents substantial questions on the merits.

## II.   PLAINTIFF WILL SUFFER IRREPARABLE HARM

Plaintiff will suffer two types of irreparable harm. First, as this Court recognized, Dkt. 54 at 65, Plaintiff will suffer irreparable harm to the extent that it suffers constitutional violations. Second, and as Plaintiff argued but this Court did not recognize, *compare* Dkt. 8 at 29 *with* Dkt. 54 at 65, "[i]mposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."

---

[1] Those attacks abound. *See, e.g.*, Ryan Reed, *Watch John Oliver Blast Televangelists, Create His Own Mega-Church*, Rolling Stone (August 17, 2015), www.rollingstone.com/tv-movies/tv-movie-news/watch-john-oliver-blast-televangelists-create-his-own-mega-church-187928/; Joe Carter, *John Oliver's Real Target Isn't Crooked Televangelists—It's Conservative Churches*, Acton Institute (August 27, 2015), https://rlo.acton.org/archives/81369-john-olivers-real-target-isnt-crooked-televangelists-its-conservative-churches.html; Amber Brenza, *John Oliver Deploys Jesus Meme Against Anti-Vaxxers*, Vice (June 26, 2017), https://www.vice.com/en/article/john-oliver-vaccines-story-jesus-meme-for-anti-vaxxers/; Will Maule, *John Oliver Mocks Christians in Bizarre Attack on Crisis Pregnancy Centers*, Faithwire (April 9, 2018), https://www.faithwire.com/2018/04/09/john-oliver-mocks-christians-in-bizarre-attack-on-crisis-pregnancy-centers/; *Health Care Sharing Ministries*, Last Week Tonight with John Oliver (June 28, 2021), https://www.youtube.com/watch?v=oFetFqrVBNc.

*Chamber of Com. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010). Compliance costs from a government rule, such as "implementation and training expenses," coupled with the risk of future consequences for "non-compliance," constitutes irreparable injury when the government is immune from damages because of sovereign immunity. *Id.* at 756–57, 771. Here, the uncontroverted record is that Plaintiff's members each spend about 200 hours in attempting to comply with Colorado's regime. Dkt. 8-5 at ¶ 20.

### III. THE EQUITIES FAVOR AN INJUNCTION

A party seeking a preliminary injunction must demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "These factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. The government "does not have an interest in enforcing a law that is likely" invalid. *Edmondson*, 594 F.3d at 771. Instead, "the public interest will perforce be served by enjoining the enforcement of the invalid provisions of [] law." *Id.* (citation omitted). Even in the context of a decision where the Court has already rejected a merits challenge, the mere *threat* of unlawful government conduct sways the equities against the government. *See Cigar Ass'n of Am.*, 317 F. Supp. 3d at 563 (inadequate interest in immediate enforcement of rule that was potentially unconstitutional).

All of these considerations are even more applicable in this case where Colorado voluntarily agreed not to enforce its regime against Plaintiff's members when Plaintiff's members did not comply with the regime last year.

10

## CONCLUSION AND PRAYER

In light of the substantial questions at issue in this case, the status quo (Plaintiff's members' non-compliance), and the equities, Plaintiff respectfully requests that the Court grant this Motion and enjoin Defendant's enforcement of the law pending appeal.[2] In the alternative, and if the Court is inclined to deny the stay pending appeal, the Court should enter an administrative stay for at least ten days to give Plaintiffs an opportunity to seek emergency relief from the Tenth Circuit.

Dated: January 28, 2024

Respectfully submitted,

*/s/ Michael F. Murray*
Michael F. Murray
PAUL HASTINGS LLP
2050 M Street, NW
Washington, D.C. 20036
(202) 551-1730
michaelmurray@paulhastings.com

William E. Mahoney
PAUL HASTINGS LLP
600 Travis Street
Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7304
williammahoney@paulhastings.com

COUNSEL FOR PLAINTIFF ALLIANCE OF HEALTH CARE SHARING MINISTRIES

---

[2] In crafting the Court's injunction, Plaintiff's members are willing to again submit the same nonintrusive information as provided in the 2023 reporting year.

11

## CERTIFICATE OF CONFERENCE

In accordance with D.C.COLO.LCivR 7.1(a), I conferred with counsel for Defendant about the foregoing relief requested. Defendant opposes the foregoing relief requested.

/s/ **_William E. Mahoney_**
William E. Mahoney

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties of record.

/s/ **William E. Mahoney**
William E. Mahoney