IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 24-cv-01386-GPG-STV

ALLIANCE OF HEALTH CARE
SHARING MINISTRIES,

    Plaintiff,

v.

MICHAEL CONWAY, in his official capacity
as Commissioner of the Colorado Division of Insurance,

    Defendant.

# ORDER

Before the Court is Plaintiff Alliance of Health Care Sharing Ministries' (the Alliance) Motion for Injunction Pending Appeal (D. 58). For the following reasons, this motion is DENIED.

## I. BACKGROUND

On May 17, 2024, the Alliance filed a motion for a preliminary injunction, asking the Court to enjoin the enforcement of Colorado Revised Statutes § 10-16-107.4 and its implementing regulation, 3 Colo. Code Regs. § 702-4:4-10-01 (*see* D. 8). This statute and regulation (collectively, the Reporting Law) generally obligate entities that offer or intend to offer health care sharing plans or arrangements to Colorado residents to report various information to Defendant

1

Michael Conway, Commissioner of the Colorado Division of Insurance (Defendant, or the Commissioner).[1]

On January 13, 2025, the Court denied the Alliance's motion, concluding that the Alliance had not shown that it was likely to succeed on the merits of any of its claims (*see* D. 54). On January 27, 2025, the Alliance filed a notice of appeal (D. 55). In its instant motion, filed on January 28, 2025, the Alliance asks that the Court "enjoin Defendant's enforcement of [the Reporting Law] pending appeal," or, alternatively, that the Court "enter an administrative stay for at least ten days to give Plaintiffs an opportunity to seek emergency relief from the Tenth Circuit" (D. 58).[2]

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(d), "[w]hile an appeal is pending from an interlocutory order . . . that . . . refuses . . . an injunction, the court may . . . grant an injunction on terms for bond or other terms that secure the opposing party's rights." In deciding a motion for an injunction pending appeal, the Court considers four factors: (1) whether the movant has made a strong showing that it is likely to prevail on the merits of its appeal; (2) whether the movant will be irreparably injured if the injunction is not granted; (3) whether granting the injunction will substantially harm the opposing parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Bradford v. U.S. Dep't of Lab.*, No. 21-CV-03283-PAB-STV, 2022 WL 266805, at *1 (D. Colo. Jan. 28, 2022). These factors substantially overlap with the factors that

---

[1] Further background on the Reporting Law and the facts of this case may be found in the Court's Order denying the Alliance's preliminary injunction motion (*see* D. 54 at 1–17).

[2] The Commissioner has not responded to this motion. But the Court exercises its prerogative to proceed without the benefit of a response, *see* D.C.COLO.LCivR 7.1(d), in part so that the Alliance may more promptly seek emergency relief from the Tenth Circuit—should it choose to seek such relief.

govern preliminary injunction requests.  *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294, 2012 WL 6930302, at *1 (10th Cir. Dec. 20, 2012) (observing that ruling on a motion for injunction pending appeal involves the "same inquiry" as a preliminary injunction analysis).

### III.  ANALYSIS

Relying on *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996), the Alliance argues that "if a party 'can meet the other requirements for a stay pending appeal, they will be deemed to have satisfied the likelihood of success on appeal element if they show questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation'" (D. 58 at 5–6).  In the Alliance's view, this is one such "case [that] presents substantial legal questions that warrant an injunction pending appeal" (*id.* at 7).

The Court does not disagree that this case presents important legal questions requiring an involved analysis.  But—as at least one judicial officer in this District has observed—the Tenth Circuit has backed away from the "substantial question" test the Alliance advances.  *See Bradford*, 2022 WL 266805, at *2–3 (observing that "*McClendon* . . . [is] no longer followed" and rejecting the movants' attempt to "rely[] on the outdated substantial question test").  Accordingly, the Alliance must still make a strong showing that it is likely to succeed on the merits of its appeal, regardless of how the other factors relevant to a request for an injunction pending appeal resolve.

The Alliance has not done this.  Instead, the Alliance argues that the Court's January 13, 2025 Order "resolves several novel legal issues" and that "discovery in this case continues to undermine Colorado's arguments" (D. 58 at 7–8).  But the Court does not find that the Alliance's

3

positions "equate to a 'strong showing' that [it is] likely to succeed on the merits of [its] appeal." *Bradford*, 2022 WL 266805, at *3.

### A. Novel Legal Questions

According to the Alliance, the "Court's opinion resolves the legal question of how to apply *Fulton's* application of strict scrutiny to regulations that authorize exemptions at officials' discretion to situations where that discretion is implemented by way of rulemaking" and addresses "the novel legal question of how to apply the Establishment Clause to regulations that intrude on the affairs of a religious organization" (D. 58 at 7).

To the Alliance's first point, it is the Alliance that is asking to apply *Fulton* in a novel way. As the Court's January 13, 2025 Order observed, *Fulton's* concern is not exemptive authority generally, but the exercise of *individualized* exemptive authority—it applies by its terms to laws that provide "a mechanism for individualized exemptions" (D. 54 at 28 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)). It is possible that the Tenth Circuit could construe *Fulton* to apply to laws that confer broader rulemaking authority on state agencies (as opposed to laws that authorize state officials to make individualized determinations). But "[t]he sheer possibility of a reversal—a possibility that exists in every appeal—is insufficient for the Court to find an injunction . . . is necessary here." *Delux Pub. Charter, LLC v. Cnty. of Westchester*, No. 22-CV-01930 (PMH), 2024 WL 3744167, at *3 (S.D.N.Y. July 25, 2024).

The Alliance's second point regarding this case's novelty fares no better. How the Establishment Clause applies to regulations that intrude on the affairs of a religious organization is not a "novel legal question." There is a longstanding and well-established body of caselaw that confirms that generally applicable administrative and recordkeeping regulations may be imposed

4

on religious entities without violating the Establishment Clause (*see* D. 54 at 35 (explaining that "*Kennedy* [*v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022)] does not draw into doubt the various Supreme Court precedents validating the constitutionality of generally applicable administrative and recordkeeping regulations" and citing cases)). In the Court's view, the Reporting Law falls under the umbrella of this authority. Again, the Tenth Circuit may disagree, but that possibility does not mean that the Alliance has made a strong showing that it is likely to succeed on the merits of its appeal.

B. New Evidence

The Alliance's arguments concerning evidence obtained through discovery—even assuming that they inform the Alliance's prospects of success on appeal—are unpersuasive.[3] The Alliance first points to email correspondence including Colorado insurance officials and state legislative staff addressing questions about whether the Reporting Law would apply to a charitable entity (*see* D. 58 at 8; D. 58-1 at 26–33). The Alliance reads this email chain as discussing how the Reporting Law's delegation of rulemaking authority to the Commissioner would be used to exempt a particular favored entity. But the Court reads this correspondence as reflecting a more general intent not to subject charitable organizations to the Reporting Law, because they do not

---

[3] The Alliance's motion at various points appears to attack the Court's January 13, 2025 Order on the basis that the Court denied the Alliance's preliminary injunction request without a hearing (*see, e.g.*, D. 58 at 9 (stating that the evidence the Alliance has obtained in discovery, "which would have been presented at an evidentiary hearing, further confirms this case presents substantial questions on the merits")). The Court notes that the record it ruled on included around one thousand pages of evidence, including various declarations, deposition testimony, and reports; that the Alliance had multiple years pre-suit to marshal evidence in support of its constitutional claims; and that the Court agreed to an extended briefing schedule (under which the Alliance filed its reply brief in September 2024). And—as the Alliance concedes—this case largely turns on issues of law. Moreover, the Alliance never moved for leave to supplement the preliminary injunction record, nor did it move for reconsideration of the Court's order denying its preliminary injunction request on the basis of any evidence it obtained in discovery. Nor does the Alliance indicate when it received the evidence in discovery. In any event, for the reasons explained below, the Court does not find the Alliance's new evidence persuasive.

pose the same consumer risks as the health sharing plans Colorado intended to regulate. The email chain actually nicely illustrates how the Reporting Law's drafters intended its rules-based exemptive approach to function in practice. That is, it shows that the Reporting Law's drafters wanted to give the Commissioner the flexibility to exempt entire *categories* of payment arrangements that do not pose the same consumer risks as the health sharing plans the Reporting Law is intended to regulate, not that the Reporting Law's drafters wanted to give the Commissioner the ability to provide waivers to individual entities whose values he happens to approve of.

The Alliance also points to emails documenting the Colorado Division of Insurance's (the Division) efforts to provide source materials to a producer of John Oliver's television show for a story on health care sharing ministries (*see* D. 58 at 8–9; D. 58-1 at 34–45). According to the Alliance, this collaboration reflects the Division's animus towards the religious practices of health care sharing ministries because "[n]o reasonable government official could understand this high-level engagement [with the producer] as anything other than supporting Mr. Oliver's historical attacks on religion" (D. 58 at 9). But there is an obvious innocent explanation for why the Division might engage with someone like Mr. Oliver. With all due respect to the Division, Mr. Oliver likely has a significantly greater popular following. It strikes the Court that the likely reason the Division worked with Mr. Oliver was so that it could use his platform to advise consumers of health sharing plans' documented risks, not so that they could express their disapproval of the religious beliefs and religious practices of sharing ministries.

Finally, the Alliance points to an email from the Commissioner explaining that he was "signed off on [the Reporting Law] going to bill paper," but was "going to need help building the case for the disclosure requirements" (*see* D. 58 at 9; D. 58-1 at 47–52). According to the Alliance,

this language confirms that the Commissioner's justification for the Reporting Law is a post-hoc invention. But the Alliance takes the Commissioner's statement out of context. The email reads, in full:

> I've signed off on this going to bill paper. I'm going to need help building the case for the disclosure requirements either through our consumer complaints and/or through stories in the press. Dayle, please talk to Vince regarding consumers being mislead or confused about the terms of a sharing ministry. If anyone has any other thoughts about ways to support the disclosure requirement please talk with me. Thank you.

(D. 58-1 at 47).

This is hardly an admission that the Commissioner supported the Reporting Law for no reason—rather, it indicates the Commissioner's awareness that the Division had received consumer complaints speaking to consumer confusion concerns. The thrust of this email seems to be about building public support for a bill the Commissioner believed necessary, not a request for help inventing some justification that did not exist in the first instance.

In sum, the Alliance's new evidence does not move the needle. It does not change the Court's view that a preliminary injunction is not appropriate. And—even assuming that it could be relevant to the Alliance's likelihood of success on the merits of its appeal—the Court does not find that the Alliance's new evidence means the Alliance has made a "strong showing" of its likelihood of success on appeal.

## IV. CONCLUSION

Because the Alliance has not made a strong showing that it is likely to prevail on the merits of its appeal, the Court declines to consider the other factors in the injunction-pending-appeal analysis. *See Bradford*, 2022 WL 266805, at *4 ("Because plaintiffs have failed to show a strong likelihood that they will succeed on the merits of their appeal, the Court need not consider the

other factors for a stay or injunction pending appeal."). The Alliance's request for a stay pending appeal is DENIED.

The Alliance's alternative request that the Court "enter an administrative stay for at least ten days to give Plaintiffs an opportunity to seek emergency relief from the Tenth Circuit" is likewise DENIED. As an initial matter, there is nothing to stay. The Order the Alliance is challenging on appeal denies a request to preliminarily enjoin the Reporting Law—a "stay" of that Order would have no effect. In substance, then, the Alliance seems to be asking that the Court preliminarily enjoin the Reporting Law for at least ten days. But it is not clear to the Court that it has any authority to issue a preliminary injunction pending appeal without reference to the factors discussed above, including the Alliance's likelihood of success on the merits of its appeal. The Court thus views the Alliance's request for an administrative stay as duplicative of its request for an injunction pending appeal. And it denies this request for the same reasons.

The Court also observes that an injunction of significantly longer than ten days would be necessary to have any real-world effect. The Reporting Law imposes a reporting deadline of March 1 (and grants reporting parties 30 days to cure any deficiencies the Commissioner identifies in their reporting). Under these circumstances, it is not clear to the Court how a ten-day injunction would help the Alliance—even if the Alliance's concern is that the Commissioner will ask its members to provide information they declined to provide in the previous reporting cycle. (The Alliance may of course seek emergency relief from the Tenth Circuit under Federal Rule of Appellate Procedure 8(a)(2), advising the Tenth Circuit of its members' actual or potential reporting deadlines.)

8

DATED February 3, 2025.

BY THE COURT:

Gordon P. Gallagher
United States District Judge